UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MERVIN MUNIZ, | : | |
| | : | |
| | : | Civil Action No. 13-178 (MAS) |
| Petitioner, | : | |
| | : | |
| v. | : | OPINION |
| | : | |
| JOHN POWELL, et. al., | : | |
| | : | |
| Respondents. | : | |
| | : | |

APPEARANCES:

MERVIN MUNIZ, Pro Se Petitioner
#446993-875680B
East Jersey State Prison
3-Wing Cell 337
Lock Bag R
Rahway, New Jersey 07065

MEGHAN MARIE O'NEILL, ESQ.
OCEAN COUNTY PROSECUTOR'S OFFICE
119 Hooper Avenue, P.O. Box 2191
Toms River, New Jersey 08754
Counsel for Respondents

SHIPP, District Judge

Petitioner Mervin Muniz ("Petitioner") challenges his 2003 New Jersey state court judgment of conviction in this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons discussed below, the petition will be denied for lack of merit.

# I. BACKGROUND

### A. Procedural History

In June 2001, Petitioner was indicted by an Ocean County Grand Jury, under Indictment No. 01-06-0880, on three counts of first degree attempted murder, in violation of N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3a(1); three counts of aggravated assault in the second degree in violation of N.J.S.A. 2C:12-1b(1); and three counts of possession of a weapon for an unlawful purpose in the third degree, in violation of N.J.S.A. 2C:39-4d, stemming from the October 16, 2000 attempted murder of Dion Jackson, Antoin Jackson, and Rascule T. Muldrow, in Lakewood, New Jersey. Petitioner also was indicted under a separate Indictment, No. 00-06-0781, for third degree possession of a controlled dangerous substance ("CDS"), in violation of N.J.S.A. 2C:35-10a(1). (ECF No. 19-4, RE-J[1] – Defendant's Brief on PCR Appeal at 2-3.)

Petitioner was tried before a jury, with the Honorable Edward J. Turnbach, J.S.C. presiding, from February 4, 2003, and continuing on February 5, 6, 11 and 13, 2003.[2] On February 13, 2003, the jury returned a verdict of guilty on the charges of attempted murder of Dion Jackson, aggravated assault of Antoin Jackson, and use of a firearm with respect to the crimes committed against Dion and Antoin Jackson. Petitioner was acquitted of the remaining charges. (*Id.* at 3-4.) On March 10, 2003, Petitioner pled guilty on the possession of CDS

---

[1] Respondents attached a list of exhibits representing the relevant state court record, hereinafter designated as "RE", with exhibits designated as A through S. The list of exhibits is docketed at ECF No. 19-3.

[2] Trial transcripts are designated as follows:

      1T – transcript of February 4, 2003
      2T – transcript of February 5, 2003
      3T – transcript of February 6, 2003
      4T – transcript of February 11, 2003
      5T – transcript of February 13, 2003

These transcripts were not provided to the Court, but the State's counsel indicated that the transcripts were available upon request.

charge, pursuant to a plea agreement in which the State recommended a three-year sentence to run concurrent to the sentence to be imposed on the attempted murder conviction. (*Id.* at 4.)

A sentencing hearing was conducted on March 21, 2003 before Judge Turnbach. Judge Turnbach sentenced Petitioner to twenty years in prison with a ten-year parole disqualifier on the attempted murder charge (a Graves Act[3] offense). Judge Turnbach also imposed a consecutive term of ten years with five years parole ineligibility on the aggravated assault conviction (also a Graves Act offense). A concurrent three-year sentence on the separate possession of CDS conviction was imposed that same day. (*Id.* at 4-5.)

On or about July 9, 2003, the Office of the Public Defender filed a notice of appeal on behalf of Petitioner from his conviction and sentence before the Superior Court of New Jersey, Appellate Division. From December 1, 2003 to May 12, 2004, Petitioner's counsel requested several extensions of time to file a brief on direct appeal. The Appellate Division granted each request for an extension. However, on May 25, 2004, a Notice of Withdrawal of Appellant's Appeal was filed with the Appellate Division. On June 1, 2004, the Appellate Division dismissed the appeal accordingly. (*Id.* at 5.)

More than two years later, on September 12, 2006, Petitioner filed a motion for a reduction of sentence and change of custody. (*Id.* at 6.) That motion was denied on November 28, 2006. On September 18, 2007, Petitioner filed a petition for post-conviction relief ("PCR") in state court. (ECF No. 19-4 at RE-H.) On October 14, 2008, Petitioner filed a memorandum of law in support of his state PCR petition. He later submitted a pro se letter brief raising claims of trial court error. (ECF No. 19 – Answer at 3; RE-J.) The state PCR court held oral argument

---

[3] New Jersey's Graves Act, N.J.S.A. 2C:43–7a, is an enhanced sentencing law applied in this case because Petitioner used a firearm in the commission of the crimes of attempted murder and aggravated assault.

on the PCR petition on June 24, 2009.  (*Id.*; RE-K.)  The PCR court denied the PCR petition on

July 14, 2009, and amended the judgment of conviction resentencing Petitioner.  (*Id.*; RE-L.)

Petitioner then appealed from denial of his PCR petition, and on February 28, 2011, the

Appellate Division affirmed the denial of the PCR petition in an unpublished opinion.  *State v.

Muniz*, 2011 WL 677224 (N.J. Super. A.D. Feb. 28, 2011).  The New Jersey Supreme Court

denied certification on January 13, 2012.  (ECF No. 19 – Answer at 4; RE-Q.)

On or about January 10, 2013, Petitioner timely filed this habeas petition pursuant to 28

U.S.C. § 2254.  (ECF No. 1.)  The State filed a response to the petition, together with the

relevant record (excluding trial transcripts), on February 5, 2014.  (ECF No. 19.)  Petitioner filed

a traverse or reply on February 28, 2014.  (ECF No. 20.)

B.  Statement of Facts

This Court, affording the state court's factual determinations the appropriate deference,

*see* 28 U.S.C. § 2254(e)(1), will simply reproduce the recitation as set forth in the February 28,

2011 opinion of the New Jersey Appellate Division as to Petitioner's appeal from denial of his

state PCR petition:

> Defendant's conviction arose out of shooting incidents occurring on October 16, 2000
> that caused life-threatening injuries to twin brothers, Dion and Antoin [footnote omitted]
> Jackson. [footnote omitted]  The shootings followed an argument between defendant and
> Antoin concerning the latter's girlfriend. The argument started in a residence and then
> continued outside. Defendant retrieved a handgun from his vehicle and shot Dion in the
> chest and Antoin in the stomach. Both victims were treated for life-threatening injuries at
> the Jersey Shore Medical Center.

*State v. Muniz*, 2011 WL 677224 (N.J. Super. A.D. Feb. 28, 2011).  (*See also* ECF No. 19-5, RE-

O - *State v. Muniz*, Docket No. A-0859-09T4, slip op. at 1-2.)

## II.  STATEMENT OF CLAIMS

Petitioner raises the following claims for habeas relief:

Ground One:  Petitioner was denied effective assistance of trial counsel.

Ground Two:  The trial court erred in permitting non-expert opinion testimony.

Ground Three:  The trial court erred in allowing the State to elicit inadmissible evidence from their witness testimony.

Ground Four:  The trial court failed to give a "*Clawans*" charge to the jury, depriving Petitioner of his right to a fair trial.

Ground Five:  "The State's request that defendant be resentenced to a NERA term must be denied as the prerequisites of a NERA term were not met at the time of sentence."

Ground Six:  "If NERA were to apply, the defendant would have received ineffective assistance of counsel as he was unaware of possibility of NERA sentence on the counts he was convicted, when he elected to proceed to trial."

Ground Seven:  Cumulative error.

(ECF No. 1 – Petition at 6-10.)

The State contends that Petitioner's claims for habeas relief should be denied for lack of substantive merit, or because they do not state a claim of a constitutional violation necessary to provide a basis for grant of federal habeas relief.  (ECF No. 19 - Respondents' Answer.)

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, this Court has jurisdiction to entertain a petition for federal habeas relief as follows:

> [A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

As to any claim adjudicated on the merits in state court proceedings, the writ shall not

issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Parker v. Matthews*, 132 S. Ct. 2148, 2151 (2012).

"Clearly established Federal law" is determined as of the date of the relevant state court

decision and is limited to the record that was before the state court that adjudicated the claim on

the merits. *Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011); *Cullen v. Pinholster*, 131 S. Ct. 1388,

1398 (2011).  A state-court decision is "contrary to" clearly established federal law if the state

court (1) contradicts the governing law set forth in Supreme Court cases or (2) confronts a set of

facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless

arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Jamison v. Klem*,

544 F.3d 266, 274 (3d Cir. 2008).  The state court judgment must contradict clearly established

decisions of the Supreme Court, not merely law articulated by any federal court, *Williams*, 529

U.S. at 405, although district and appellate federal court decisions evaluating Supreme Court

precedent may amplify such precedent, *Hardcastle v. Horn*, 368 F.3d 246, 256 n. 3 (3d Cir.

2004) (citing *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 890 (3d Cir. 1999)).

"[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the

Supreme Court,' [and] therefore cannot form the basis for habeas relief under AEDPA." *Parker*,

132 S. Ct. at 2155.  The state court is not required to cite or even have an awareness of governing

Supreme Court precedent "so long as neither the reasoning nor the result of [its] decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *Jamison*, 544 F.3d at 274–75. Few state court decisions will be "contrary to" Supreme Court precedent.

The federal habeas court more often must determine whether the state court adjudication was an "unreasonable application" of Supreme Court precedent. A state-court decision involves an "unreasonable application" of clearly established federal law if the state court (1) identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case; or (2) unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 407. A showing of clear error is not sufficient. *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003). Nor is habeas relief available merely because the state court applied federal law erroneously or incorrectly. *See Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) (stating that under § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." (quoting *Williams* at 410)); *see also Metrish v. Lancaster*, 133 S.Ct. 1781, 1786–87 (2013); *Thomas v. Varner*, 428 F.3d 491, 497 (3d Cir. 2005); *Jacobs v. Horn*, 395 F.3d 92, 100 (3d Cir. 2005). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law

beyond any possibility for fair-minded disagreement." *Harrington*, 131 S. Ct. at 786–87. *See also Metrish*, 133 S.Ct. at 1787.

Federal courts must follow a highly deferential standard when evaluating, and thus give the benefit of the doubt to, state court decisions. *See Felkner v. Jackson*, 131 S. Ct. 1305, 1307 (2011); *Pinholster*, 131 S. Ct. at 1398; *Eley v. Erickson*, 712 F.3d 837, 845 (3d Cir. 2013). *See also Harrington*, 131 S. Ct. at 786 (stating habeas corpus "is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."); *Renico v. Lett*, 559 U.S. 766, 773 (2010) ("whether the trial judge was right or wrong is not the pertinent question under AEDPA"); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable -- a substantially higher threshold"); *Lockyer*, 538 U.S. at 75 (stating it is not enough that a federal habeas court, in its independent review of legal question, is left with firm conviction that the state court erred).  This standard applies even where "the state court analyzed and rejected a habeas petitioner's federal claims on the merits but gave 'no indication of how it reached its decision.'" *Grant v. Lockett*, 709 F.3d 224, 230 (3d Cir. 2013) (quoting *Han Tak Lee v. Glunt*, 667 F.3d 397, 403 (3d Cir. 2012)).

A state court decision is based on an unreasonable determination of the facts only if the state court's factual findings are objectively unreasonable in light of the evidence presented in the state-court proceeding. *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003).  Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence.  28 U.S.C. § 2254(e); *see Rice v. Collins*, 546 U.S. 333, 339 (2006) (petitioner bears the burden of rebutting presumption by clear and convincing evidence); *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001) (factual

determinations of state trial and appellate courts are presumed to be correct). Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." *Campbell v. Vaughn*, 209 F.3d 280, 289 (3d Cir. 2000). In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly. *Id.* (citing *Marshall v. Lonberger*, 459 U.S. 422, 433 (1982)).

Even if the petitioner is entitled to habeas relief, the court will grant the writ only if the error was not harmless. Under the harmless error standard, "a court must assess the prejudicial impact of [the] constitutional error in [the] state-court criminal trial." *Fry v. Pliler*, 551 U.S. 112, 121 (2007). A court should hold the error harmless unless it led to "actual prejudice," in the form of a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quotation omitted); *Eley v. Erickson*, 712 F.3d at 847.

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. *See Rainey v. Varner*, 603 F.3d 189, 198 (3d Cir. 2010); *Royce v. Hahn*, 151 F.3d 116, 118 (3d Cir. 1998).

## IV. DISCUSSION

### A. Ineffective Assistance of Counsel Claims

Petitioner raises various claims of ineffective assistance of counsel in Ground One of his habeas petition. To prevail on a claim of ineffective assistance of counsel in a § 2254 case, Petitioner must show that (1) counsel's performance was so deficient as to deprive him of the

representation guaranteed under the Sixth Amendment of the Constitution, and (2) the deficient performance prejudiced the defense by depriving the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Glenn v. Wynder*, 743 F.3d 402, 409 (3d Cir. 2014) (holding that, in an ineffective assistance of counsel claim, petitioner must prove (1) that his trial counsel's performance was so deficient in that it fell below an objective standard of reasonableness, and (2) prejudice by showing a reasonable probability that, but for counsel's deficient performance, the outcome at trial would have been different) (citing *Strickland, supra*). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686; *Ross v. Varano*, 712 F.3d 784, 797–98 (3d Cir. 2013).

"Since Strickland, the Supreme Court and [the Third Circuit] have emphasized the necessity of assessing an ineffectiveness claim in light of all the circumstances." *Siehl v. Grace*, 561 F.3d 189, 195 (3d Cir. 2009) (citing cases). When a federal habeas petition under § 2254 is based upon an ineffective assistance of counsel claim, the "pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which "is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Grant*, 709 F.3d at 232. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. *See id.* "A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself." *Id.* Federal habeas review of ineffective assistance of counsel claims is thus "doubly deferential." *Id.* (quoting *Pinholster*, 131 S.Ct. at 1403). Federal habeas courts must "take a highly deferential look at counsel's performance" under *Strickland*, "through the

deferential lens of § 2254(d)." *Id.* (internal quotations and citations omitted).  As the Third Circuit recently stated, "the Constitution guarantees criminal defendants only a fair trial and a competent attorney.  It does not insure that defense counsel will recognize and raise every conceivable constitutional claim." *U.S. v. Travillion*, 759 F.3d 281, 289 (3d Cir. 2014) (quoting *Engle v. Isaac*, 456 U.S. 107, 134 (1982)).  On habeas review, courts "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Travillion, supra* (quoting *Strickland*, 466 U.S. at 689, and *Berryman v. Morton*, 100 F.3d 1089, 1094 (3d Cir. 1996)).  The Third Circuit recently observed that *Strickland*'s test is demanding as there is a "strong" presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Branch v. Sweeney*, 758 F.3d 226, 234 (3d Cir. 2014) (quoting *Burt v. Titlow*, --- U.S. ----, ----,134 S.Ct. 10, 17 (2013)).  Thus, Petitioner faces a stringent requirement to show that, given all the circumstances of the case, "counsel's mistake was so egregious that it fell 'outside the wide range of professionally competent assistance.'" *Branch*, 758 F.3d at 235 (quoting *Strickland*, 466 U.S. at 690).  Moreover, the court must assess the reasonableness of counsel's performance at the time of trial and not with the benefit of hindsight. *Id.*

In addition to showing deficient performance by counsel, *Strickland* requires that Petitioner demonstrate that he was prejudiced by his defense counsel's alleged deficient performance.  This places the burden on him to establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  As the Third Circuit has explained:

> [The petitioner] "need not show that counsel's deficient performance 'more likely than not altered the outcome of the case'—rather, he must show only 'a probability sufficient to undermine confidence in the outcome.'" *Jacobs v. Horn*, 395 F.3d 92, 105 (3d Cir. 2005) (quoting *Strickland*, 466 U.S. at 693–94).  On the other hand, it is not enough "to

show that the errors had some conceivable effect on the outcome of the proceeding." *Harrington [v. Richter]*, 131 S.Ct. at 787 (citing *Strickland*, 466 U.S. at 693). Counsel's errors must be "so serious as to deprive the defendant of a fair trial." *Id.* at 787–88 (citing *Strickland*, 466 U.S. at 687). The likelihood of a different result must be substantial, not just conceivable. *Id.*

*Brown v. Wenerowicz*, 663 F.3d 619, 630 (3d Cir. 2011).

1. *Failure to Present a Defense of Diminished Capacity.*

Petitioner complains that his trial counsel was ineffective because he did not "zealously" present a defense of diminished capacity. Petitioner raised this claim in his state PCR proceedings, and the PCR court denied relief.

The state PCR record shows that Petitioner had been examined by Dr. Daniel P. Greenfield, before trial pursuant to a request by Petitioner's public defender at that time. In a report, dated July 30, 2001,[4] Dr. Greenfield opined that a diminished capacity defense was available to Petitioner based on Petitioner's background, history and reported drug use. However, the State provided a report from Dr. Marc Sageman, which stated with a high degree of medical probability that Petitioner was not suffering from any mental or psychotic disorder at the time of the crime, and that there was nothing suggestive in Petitioner's history to support a diagnosis of schizophrenia. Moreover, Dr. Sageman opined that Petitioner's drug use at the time was not sufficient to negate his specific intent to commit the crime for which he was charged. (ECF No. 19-4 – June 24, 2009 PCR Transcript at 21:1-22; RE-K.)

The PCR court remarked that, in order to pursue an intoxication defense, Petitioner had to show that his faculties "were so prostrated" that Petitioner "was incapable of forming the intent to commit the crime." (*Id.*, 22:1-2.) At the time of trial, however, Petitioner had been insistent that he not testify because he was concerned that his criminal history and drug use would be

---

[4] Petitioner attaches a copy of Dr. Greenfield's report to his habeas petition. (ECF No. 1-1.)

adversely considered by the jury. Indeed, as the PCR Court noted, Petitioner's concern was addressed by his counsel on the record at trial. (*Id.*, 22:14-24.)

Moreover, the PCR court found there was substantial evidence, mainly witness testimony, that refuted an intoxication defense. Specifically, the court stated:

> . . . Numerous witnesses testified that the defendant stepped off the porch, went to his car and retrieved a handgun from the glove compartment. Witnesses testified the defendant then walked back toward the porch and began firing at the [sic] Deon Jackson and Antwan Jackson who were seated on the porch. The evidence at trial showed that the defendant was aware of his surroundings and walked from the porch to the car under his own volition. From all appearances he had time to form the necessary intent either before going outside, while on the porch, during his walk to the car or during his return to the porch; furthermore, there was no evidence that the defendant had been engaged in any drinking or drug use at the time of the incident or that an argument had preceded it.

(*Id.*, 23:12-24:1.) Thus, the PCR court concluded that, based on these facts, trial counsel was not deficient in declining to pursue a diminished capacity defense. (*Id.*, 24:2-7.)

More significantly, the PCR court found that even if trial counsel had pursued a diminished capacity defense, Petitioner could not demonstrate that the trial outcome would not have been different. The court commented that Dr. Greenfield's report gave a conclusory or net opinion of schizophrenia that did not have substantial factual support. Indeed, Dr. Sageman's report stated that, at the time of Petitioner's evaluation by Dr. Greenfield, Petitioner was not suffering any mental disorder, nor did he display any symptoms of schizophrenia. Namely, Petitioner denied any delusions or hallucinations, he did not show any "disorganized speech or grossly disorganized behavior," and he "did not have a negative affective symptom such as affective flattening, alogia or avolition," which are the only symptoms of schizophrenia. The court further commented that there was nothing in Petitioner's background to suggest that he suffered from schizophrenia, and that his school records and numerous psychological evaluations

failed to document any symptoms of schizophrenia.  Petitioner himself denied mental distress

and had not sought any mental health treatment before his arrest.  (*Id.*, 24:7-25:25.)

On appeal from denial of the PCR petition, the Appellate Division found that:

The record reflects sufficient reasons for trial counsel to forgo a diminished capacity defense.  The expert report submitted on behalf of defendant, as the PCR judge found, provided an insufficient factual basis to support her opinion that defendant suffered from schizophrenia.  Her report contained no findings that identified in defendant any of the symptoms of schizophrenia set forth in the DSM-IV.[5]  The State's expert report noted that the symptoms of schizophrenia are reported in the DSM-IV and include "affective flattening, alogia and avolition" and nothing in defendant's school records or any of the prior multiple psychological evaluations reported schizophrenia.  Further, both reports noted defendant's substance abuse, with the defense expert presupposing that defendant voluntarily ingested illegal narcotics on the evening of the shootings.  Hence, defendant's diminished capacity theory would also include his history of substance abuse.  Defense counsel expressed his and defendant's concern about "open[ing] up the door" as to drug usage.  In electing not to testify, defense counsel represented to the court defendant's concern of not only exposing his prior criminal record to the jury but also his drug usage.

Moreover, even if diminished capacity had been pursued, there was substantial evidence before the jury demonstrating the purposefulness of defendant's conduct.  Defendant engaged in an argument in a residence and, when asked to "take it outside," complied with the request.  Rather than continue the argument outside, defendant went to his vehicle, retrieved a gun, pointed it at the victims, and said, "See me now," and then shot them.  Given these facts, it is unlikely "the result of the proceeding would have been different."  [citation omitted.]

*Muniz*, 2011 WL 677224 at *3.

With respect to a diminished capacity defense in New Jersey, the relevant statute states as

follows:

[e]vidence that the defendant suffered from a mental disease or defect is admissible whenever it is relevant to prove that the defendant did not have a state of mind which is an element of the offense. In the absence of such evidence, it may be presumed that the defendant had no mental disease or defect which would negate a state of mind which is an element of the offense.

N.J. Stat. Ann. § 2C:4–2.

---

[5] Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) published by the American Psychiatric Association.

In this case, Petitioner fails to show that he is entitled to federal habeas relief based on his argument that counsel was ineffective in failing to pursue a diminished capacity defense. Petitioner has not demonstrated that the state court's analysis under either the deficient performance or prejudice prongs was an unreasonable application of *Strickland*. Indeed, during the PCR proceedings, the state court found that there was no factual evidence to support a diminished capacity defense based on either drug use or schizophrenia. Petitioner's reliance on Dr. Greenfield's report was completely undermined by the evidence and Dr. Sageman's report, which showed no background or history of schizophrenia. Moreover, witness testimony and the lack of evidence to show Petitioner had used drugs at the time of the crime showed that Petitioner had acted of his own volition, possessing the necessary intent to commit the crimes for which he was charged. Thus, even if counsel's actions fell below an objective standard of reasonableness, which the facts of the case likewise do not support given Petitioner's reluctance to introduce testimony of his drug use at trial, Petitioner plainly has not shown that but for these errors, the result at trial would have been different. *Brown*, 663 F.3d at 630.

Therefore, this Court is satisfied that the state courts correctly identified and applied the controlling Supreme Court precedent in *Strickland*, and this claim is denied as substantively meritless. *See Parker*, 132 S.Ct. at 2151 (finding when state court has adjudicated petitioner's federal claim on merits, district court "has no authority to issue the writ of habeas corpus unless the [state court's] decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding'") (quoting 28 U.S.C. § 2254(d).

2. *Counsel Was Ineffective in Presenting Conflicting Theories at Trial.*

Next, Petitioner argues that trial counsel was ineffective because he presented conflicting theories at trial, namely, first arguing that Petitioner was acting in self-defense, and later questioning identity so as to suggest that someone else was the shooter.  Specifically, Petitioner contends that trial counsel failed to present any witnesses to support the self-defense theory, thus resulting in the trial court's refusal to charge the jury on self-defense.  This claim was raised in the PCR proceedings.

The PCR court rejected Petitioner's arguments, finding that trial counsel conducted vigorous cross-examinations of the State's witnesses.  Counsel also stressed the lack of key witnesses to cast doubt on the identity of the shooter.  The PCR court noted that the trial strategy was successful "in many ways as the defendant was acquitted on all charges relating to one of the victims and was acquitted of attempted murder against another victim." (ECF No. 19-4, RE-K – June 24, 2009 PCR Transcript at 27:1-8.)   Moreover, the self-defense strategy was established through cross-examination of the State witnesses who testified that Petitioner was outnumbered by the others on the porch and that the Jackson twins were larger and stronger than Petitioner.  Ultimately, there was no testimony to show that a physical altercation had occurred before Petitioner retrieved his gun, nor was there evidence that the victims were armed or threatened Petitioner with deadly force.  (*Id.*, 27:9-24.)

The Appellate Division affirmed the PCR court on Petitioner's appeal.  The Appellate Division found that:

> . . . the PCR judge properly observed that during the trial, based upon the vigorous cross-examination of the State's witnesses, trial counsel appropriately made the tactical decision to change the legal theory from self-defense to identity.  Defense counsel was able to demonstrate that despite the fact there were allegedly numerous people who saw the shooting, none of those witnesses testified during the trial, and that the victims gave

conflicting accounts of what happened, including a statement from Dion to police days following the incident that he didn't remember the shooting or being shot by defendant.

Despite the multiple counts of the indictment, defendant was acquitted of all charges related to the victim, Rascule Muldrow, acquitted of attempted murder of Antoin, and only found guilty of attempted murder of Dion. Under these circumstances, the change in theory as the evidence unfolded at trial did not demonstrate ineffective assistance of counsel. Strategic decisions of trial counsel are "virtually unchallengeable." *Strickland*, *supra*, 466 U.S. at 690, 104 S.Ct. 2052 at 2066, 80 L. Ed.2d 674 at 695.

*Muniz*, 2011 WL 677224 at *3.

This Court concludes that this aspect of Petitioner's ineffectiveness of counsel claims does not merit habeas relief. This conclusion is buttressed by the "doubly" deferential standard with which federal courts are to evaluate the state court's conclusions on ineffectiveness claims. *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). *See also Harrington*, 131 S.Ct. at 788. With that standard in mind, this Court cannot find any basis upon which to conclude that the state courts unreasonably interpreted and applied *Strickland* when it measured the performance of counsel with respect to the defense strategy pursued at trial, particularly in light of the fact that Petitioner was acquitted of most of the charges for which he was tried. Accordingly, habeas relief is not granted on this claim.

3. *Failure to Properly Prepare for Trial.*

Next, Petitioner generally argues that trial counsel was ineffective because he failed to properly prepare for trial. The state courts rejected this claim on PCR review, finding that Petitioner's claim amounted "to nothing more than a bold assertion that the amount of preparation was inadequate." (ECF No. 19-4, ECF-K – June 24, 2009 PCR Transcript at 28:10-29:8.) The Appellate Division further remarked that "Defendant presented no specific facts supported by affidavits or certifications from persons with personal knowledge that trial counsel

failed to prepare for the trial.  Such bald assertions alone are insufficient to justify an evidentiary hearing." *Muniz*, 2011 WL 677224 at *4.

This Court finds that Petitioner is not entitled to habeas relief on this ineffective assistance of counsel claim because he has not shown that the New Jersey courts' rejection of those claims was based on an unreasonable determination of the facts in light of the evidence presented, or that it was contrary to, or an unreasonable application of *Strickland* and its progeny.

B. Evidentiary Issues

In Ground Two of his petition, Petitioner asserts that the trial court erred in allowing non-expert testimony of a trauma surgeon, Dr. David Burke, regarding his opinion on the cause of Dion Jackson's loss of vision.  Petitioner argues that it was prejudicial error to allow this opinion testimony on a requisite element of aggravated assault, namely whether Petitioner caused serious bodily injury to the victim.  (ECF No. 1 – Pet. at 7.)  This claim was raised in the state PCR proceedings.

The PCR court noted that Dr. Burke testified within his qualifications as an expert witness in the field of medical treatment and surgery.  Dr. Burke testified that he was one of three trauma surgeons who had treated the victims.  At issue, Dr. Burke also testified that it was his opinion to a reasonable degree of medical certainty that Dion Jackson's vision loss was due to the injury to his heart, which caused decreased blood flow to the brain.  (ECF 19-4, RE-K – June 24, 2009 PCR Transcript at 33:3-34:4.)  The trial court gave the model jury instruction regarding expert testimony before Dr. Burke testified as well as during the final jury charges. Specifically, the trial court told the jury that certification of an expert did not mean that the court endorsed the expert opinion, but rather, it was the jury to decide the merit of the doctor's testimony during jury deliberations.  (*Id.* at 34:8-15.)

In Ground Three of his habeas petition, Petitioner argues that the trial court also erred in allowing the State to elicit inadmissible evidence from a witness.  In particular, Petitioner states that, during direct examination of Sergeant Joseph Isnardi, the State elicited testimony that Petitioner was in the custody of the Philadelphia Police Department.  Petitioner contends that this testimony, without curative jury instructions, had the capacity to deprive Petitioner of a fair trial because the jury could easily infer that Petitioner had been arrested by Philadelphia police on unrelated charges and thus has a propensity to commit crimes.  (ECF No. 1 – Pet. at 8.)

Petitioner also raised this claim in his state PCR proceedings.  The PCR court found that Sgt. Isnardi's testimony was not unduly prejudicial and the testimony did not suggest that Petitioner "had been arrested for anything other than the charges for which he was being tried." (ECF No. 19-4, RE-K PCR-T at 32:11-21.)

On PCR appeal, the Appellate Division found that both evidentiary arguments lacked sufficient merit to warrant discussion in a written opinion.  *Muniz*, 2011 WL 677224 at *5.

It is well-established that the violation of a right created by state law is not cognizable as a basis for federal habeas relief.  *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" (citation omitted)); *Ross v. District Attorney of the County of Allegheny*, 672 F.3d 198, 207 n. 5 (3d Cir. 2012) (citing *Estelle*).  Thus, Petitioner is not entitled to habeas relief for alleged errors in state law evidentiary rulings, unless those errors rise to the level of a deprivation of due process.  *Id.* at 70 ("'the Due Process Clause guarantees fundamental elements of fairness in a criminal trial'") (quoting *Spencer v. Texas*, 385 U.S. 554, 563–64 (1967)).  *See also Lee v. Glunt*, 667 F.3d 397, 403 (3d Cir. 2012); *Osei v. Balicki*, Civil No. 11-4273, 2014 WL 4798811, *3 (D.N.J. Sep. 26, 2014).

Here, Dr. Burke's testimony was not speculative opinion. Dr. Burke treated the victim during surgery and was intimately familiar with Dion Jackson's injuries and resulting trauma. Moreover, the trial judge gave the jury proper instructions on evaluating Dr. Burke's testimony. Consequently, in light of this testimony, as well as the other substantial evidence of guilt, Petitioner cannot establish that admission of Dr. Burke's testimony was erroneous or a violation of state law. Nor can Petitioner show that admission of Dr. Burke's testimony constituted a due process violation, depriving him of a fundamentally fair trial. Petitioner, therefore, is not entitled to relief on this claim.

Likewise, there is no merit to Petitioner's claim that the trial court erred in allowing testimony by Sgt. Isnardi that Petitioner had been arrested by the Philadelphia police. There was nothing in Sgt. Isnardi's testimony that suggested Petitioner had been arrested for another crime other than the ones for which he was being tried. Thus, Petitioner cannot show that admission of this testimony deprived him of a fair trial.

C. Failure to Give *Clawans* Charge

Next, Petitioner contends that the trial court erred in refusing to give a *Clawans*[6] charge to the jury after the State had failed to produce key witnesses, thus impeding Petitioner's ability to present a defense. Under *Clawans*, for the jury to be charged on the adverse inference permitted to be drawn from the non-production of a witness, it must appear that (1) the witness is within the power or control of one party, (2) the witness is practically and physically available to that party, (3) the witness' testimony will elucidate relevant and critical facts in issue, and (4) the witness' testimony would have been superior to that already utilized. *State v. Hickman*, 204 N.J. Super. 409, 414 (App. Div. 1985).

---

[6] *State v. Clawans*, 38 N.J. 162 (1962).

Defense counsel had requested a *Clawans* charge after both sides had rested.   Judge Turnbach denied the request on the grounds that defense counsel failed to make a timely request at the conclusion of the State's case.  The court also found that counsel had not indicated that the witnesses were not equally available to the defense by request or subpoena.  (ECF No. 19-4, RE-K – PCR-T at 36:6-16.)  At the PCR hearing, the PCR court, relying on state law, found that a *Clawans* charge is not to be given unless the judge is satisfied that it is clearly justified.  In this instance, the PCR court observed that the *Clawans* "inference is not proper if the witness is available to both parties."  (*Id.* at 36:17-38:2.)  The PCR court concluded that the trial judge had properly applied state law regarding the *Clawans* charge, and that the claim lacked merit.  (*Id.* at 38:3-5.)  On PCR appeal, the Appellate Division found that both evidentiary arguments lacked sufficient merit to warrant discussion in a written opinion.  *Muniz*, 2011 WL 677224 at *5.

Generally, a jury charge (or lack of one) does not merit federal habeas relief even if the instruction, as given, is inconsistent with state law.  A habeas petitioner who challenges state jury instructions must "point to a federal requirement that jury instructions ... must include particular provisions" or demonstrate that the jury "instructions deprived him of a defense which federal law provided to him."  *Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3d Cir. 1997); *cf. Henderson v. Kibbe*, 431 U.S. 145, 155 (1977) ("An omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law").  *See also Cox v. Warren*, Civil No. 11-7132, 2013 WL 6022520 at *9 (D.N.J. Nov. 13, 2013).

In this case, Petitioner fails to show that the trial court misapplied state law.  Moreover, Petitioner utterly fails to indicate how the trial court's failure to give a *Clawans* charge stripped Petitioner of a defense he wished to present.  Thus, this Court finds that the omission of a

*Clawans* charge did not offend the protections ensuing from the Due Process Clause, and this claim is denied accordingly.

D. Sentencing Issues

Petitioner also alleges that his re-sentence under the No Early Release Act ("NERA") was improper because the prerequisites of a NERA term were not met at the time of original sentencing. On July 14, 2009, after the state PCR proceeding, the PCR Court amended Petitioner's sentence, finding that the original sentence was illegal because the jury had found by special interrogatory that Petitioner had committed crimes of attempted murder and aggravated assault with a handgun, which meets the NERA's definition of a violent crime requiring a mandatory 85% period of parole ineligibility. Consequently, the PCR Court amended the sentence to include the 85% parole ineligibility mandated by NERA. (ECF No. 19-4 at RE-L – Jul. 14, 2009 Order.) Petitioner now argues that the notice and hearing requirements of NERA were not satisfied because, at the time of the original sentencing, Judge Turnbach had stated that the NERA statute did not include crimes of attempt. Moreover, Petitioner claims that the two consecutive maximum base custodial sentences were not supported by the aggravating factors present. (ECF No. 1 – Pet. at 9, Ground Five.)

Petitioner further contends that, if NERA were to apply, he received ineffective assistance of counsel because he was unaware of the applicability of NERA when he elected to proceed to trial. (*Id.*, Ground Six.)

These claims were raised on PCR review. The PCR judge denied the claims, and the Appellate Division affirmed on appeal. Specifically, the Appellate Division found:

> All of the requirements for imposition of a NERA term were satisfied at the time of defendant's conviction. Therefore, the PCR court properly corrected the illegal sentence. "This correction of defendant's illegal sentence does not offend well-established principles of double jeopardy. An illegal sentence may be corrected at any time because a

defendant has no expectation that an illegal sentence is final." [*State v.*] *Johnson, supra*, 376 N.J. Super. [163] at 170 [N.J. Super. A.D. Mar. 24, 2005].

Nor is there any evidence to support defendant's contention that he was unaware of NERA consequences upon conviction when he elected to proceed to trial. A plea offer extended to defendant prior to trial included a NERA term. After defendant rejected the plea, the trial court entered an order placing defendant on notice that upon conviction he was subject to a NERA period of parole ineligibility in addition to any custodial term.

*Muniz*, 2011 WL 677224 at *5.

Absent a claim that a sentence constitutes cruel and unusual punishment prohibited by the Eighth Amendment, or that it is arbitrary or otherwise in violation of due process, the legality and length of a sentence are questions of state law over which this Court has no jurisdiction under § 2254. *See Chapman v. United States*, 500 U.S. 453, 465 (1991) (holding that under federal law, "the court may impose ... whatever punishment is authorized by statute for [an] offense, so long as that penalty is not cruel and unusual, and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment"). *See also Anderson v. Administrator Northern State Prison*, Civil No. 09-1168, 2014 WL 6675905, *12 (D.N.J. Nov. 24, 2014).

Here, Petitioner has not pointed to any constitutional violation occasioned by this state law. To the extent he suggests that a NERA term with limited opportunity for parole constitutes an Eighth Amendment violation for cruel and unusual punishment, courts consistently reject that argument. *See, e.g., United States v. Miknevich*, 638 F.3d 178, 186 (3d Cir. 2011) ("Generally, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment. This is so because we accord substantial deference to [the legislature], as it possesses broad authority to determine the types and limits of punishments for crimes.") (citations omitted); *United States v. Walker*, 473 F.3d 71, 83 (3d Cir. 2007) (holding that 55–year mandatory sentence for armed robbery did not violate Eighth Amendment); *State v. Johnson*,

166 N.J. 523, 766 A.2d 1126, 1140–41 (2001) (holding that New Jersey's NERA statute does not constitute cruel and unusual punishment).   Moreover, Petitioner provides no argument or evidence to show that his resentence under NERA was disproportionate to other cases.

Finally, Petitioner's argument that he was unaware of the applicability of NERA before he went to trial is plainly unsupported by the record as he was informed of a possible NERA term in a plea offer he rejected.   Accordingly, Petitioner's sentencing challenges fail and he is not entitled to habeas relief on those grounds.

E.  Cumulative Error

Petitioner finally argues that "the cumulative effect of the errors complained of rendered the trial unfair."  (ECF No. 1, Pet. at 10, Ground Seven.)

The test for a "cumulative error" claim is whether the overall deficiencies "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *See Hein v. Sullivan*, 601 F.3d 897, 917 (9th Cir. 2010) (relying on *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *Thornburg v. Mullin*, 422 F.3d 1113, 1137 (10th Cir. 2005) (relying on *Donnelly*, 416 U.S. at 643); *see also Fahy v. Horn*, 516 F.3d 169, 205 (3d Cir. 2008) ("Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish 'actual prejudice.'").

As discussed above, this Court finds that there is no merit to Petitioner's claims of individual errors.  As such, there is no basis or merit for habeas relief based upon an alleged accumulation of errors that did not exist.

## V. CERTIFICATE OF APPEALABILITY

This Court next must determine whether a certificate of appealability should issue. *See* Third Circuit Local Appellate Rule 22.2. The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons discussed above, this Court's review of the claims advanced by Petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue. Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

## VI. CONCLUSION

For the above reasons, this Court finds that the § 2254 habeas petition must be denied, and a certificate of appealability will not issue. An appropriate Order follows.

_____
MICHAEL A. SHIPP
United States District Judge

DATED: 2/6/15